UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

CINDY JO KEELE,                          )
                                         )
        *Plaintiff*,                     )        No. 4:16-cv-112-SKL
                                         )
v.                                       )
                                         )
NANCY A, BERRYHILL,                      )
Acting Commissioner of Social Security,  )
                                         )
        *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Cindy Jo Keele ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has filed a dispositive motion for judgment [Docs. 14 & 19] with a supporting memorandum [Docs. 17 & 20]. This matter is now ripe. For the reasons stated below, Plaintiff's motion for judgment on the administrative record [Doc. 14] will be **DENIED**; the Commissioner's motion for summary judgment [Doc. 19] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her applications for DIB and SSI on April 5, 2013, alleging disability beginning July 25, 2012 (Transcript [Doc. 9] ("Tr.") 255-68). Plaintiff's claims were denied initially and upon reconsideration and she requested a hearing. The administrative law judge ("ALJ") held a hearing on October 21, 2015, during which Plaintiff was represented by an attorney (Tr. 31-61). The ALJ issued a decision on November 5, 2015, finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") (Tr. 11-23). After Plaintiff

requested review of the ALJ's unfavorable decision, the Appeals Council denied Plaintiff's request, and the ALJ's decision became the final, appealable decision of the Commissioner (Tr. 1-6). Plaintiff timely filed the instant action [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born in 1979 and was 33 years old, which is defined as a younger individual, on her alleged onset date (Tr. 21). She has a limited education,[1] and is able to communicate in English (Tr. 21). Her past work ranged from sedentary, skilled work to medium, semiskilled work (Tr. 21).

### B.    Medical Records

In her Disability Report, Plaintiff alleged disability due to a lumbar laminectomy/discectomy following an back injury, one knee needing reconstruction surgery due to a birth defect, severe whole body arthritis/rheumatoid arthritis, whole body numbness/little to no feeling in her hands and feet, severe emotional stress, depression, overweight, sleep deprivation/apnea, a bulging disc in back with a potential to rupture, fibromyalgia, degenerative disc disease, spinal stenosis, and poor eyesight (Tr. 307). The administrative record contains extensive medical records that were summarized by the ALJ (Tr. 16-22), and need not be summarized again herein. Only the portions of Plaintiff's medical records relevant to the parties'

---

[1] Plaintiff completed the 11th grade and received a GED (Tr. 38). Under 20 C.F.R. § 404.1564(b)(3):

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

arguments will be addressed within the respective sections of the analysis below, but the relevant records have been reviewed.

### C. Hearing Testimony

At the October 21, 2015 hearing, Plaintiff and a vocational expert ("VE") testified (Tr. 35-60). While the transcript of the testimony at the hearing has been carefully reviewed, it is not necessary to summarize the testimony herein. As needed, portions of the testimony will be addressed within the respective sections of the analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA" or "Agency") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (internal citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (internal citations omitted).

**B.      The ALJ's Findings**

Applying the five-step process, the ALJ made the following findings and conclusions (Tr. 16-23). After finding Plaintiff met the insured status requirements of the Act through December 31, 2017 (Tr. 16), at step one the ALJ found Plaintiff had not engaged in substantial gainful activity since July 12, 2012, the alleged onset date (Tr. 16). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, bilateral knee impairments, and depression (Tr. 16). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 17). The ALJ next determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with some

limitations (Tr. 18-20).[2]  At step four, the ALJ found Plaintiff is unable to perform any past relevant work (Tr. 21).  At step five, taking into consideration the claimant's age, education, work experience and RFC, and after discussing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2, as a framework for her decision and considering the testimony of the VE, the ALJ found Plaintiff was capable of performing jobs that exist in significant numbers in the national economy such as an assembler, production inspector, and machine tender (Tr. 22). These findings led to the ALJ's determination that Plaintiff was not under a disability at any relevant time (Tr. 22-23).

## IV.    ANALYSIS

Plaintiff alleges the ALJ erred (1) by failing to properly consider and weigh the medical opinion evidence; and (2) by failing to properly consider all of her severe impairments.  The Commissioner disputes each of these allegations.  The Court will address these allegations in reverse order below.

### A.    Standard of Review

A court must affirm unless the Commissioner's decision rests on an incorrect legal standard or is not supported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citation omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citation omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever

---

[2] The ALJ found Plaintiff has the RFC to perform light work except she can only: "stand and walk for four out of eight hours in an eight-hour workday, stoop frequently, balance without limitations, and occasionally crouch, crawl, kneel, and climb ramps, stairs, ladders, ropes, and scaffolding"; she should "avoid concentrated exposure to vibrations and hazards"; and she "can perform work involving simple, routine, repetitive tasks with no sustained interaction with supervisors, co-workers, or the public" (Tr. 18).

in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court, however, may not consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Consideration of Plaintiff's Impairments.

Plaintiff points out that she has been assessed with lumbar degenerative disc disease, lumbar post-laminectomy syndrome, lumbar radiculopathy, brachial neuritis, psoriasis, chronic pain syndrome, and cervical impairment [Doc. 17 at Page ID # 777 (citing Tr. 408, 444, 628, 634, 645, and 650)]; that "[p]hysical examinations revealed lumbar tenderness; decreased range of motion of the cervical and lumbar spine; bilateral positive straight leg raise; and bilateral knee restricted range of motion," [*id* (citing Tr. 430, 629, and 650)]; that she underwent trigger point injections [*id* (citing Tr. 496, 501, 506, 511, and 518)]; that an MRI "of the lumbar spine from May of 2015 revealed multilevel abnormalities including a broad-based disc protrusion at L5-S1 which effaces the anterior aspect of the thecal sac and abuts the S1 nerve roots as well as posterior osteophyte/facet joint arthropathy," [*id* (citing Tr. R. 643)]; and that an "MRI of the cervical spine from May of 2015 revealed multilevel abnormalities including moderate left neural foraminal narrowing at C5-6 as well as multilevel uncovertebral and facet joint arthropathy" [*id* at Page ID # 778 (citing Tr. 645].[3]

Plaintiff alleges the ALJ erred by not "sufficiently stat[ing]" why Plaintiff's "chronic pain syndrome, lumbar postlaminectomy syndrome, and lumbar radiculopathy" were not found to be severe impairments [Doc. 17 at Page ID # 783]. Defendant does not dispute these diagnoses are

---

[3] Plaintiff also specifically questions the ALJ's failure to "acknowledge the actual findings on the MRI's of the cervical and lumbar spine" that (1) "revealed multilevel abnormalities including a broad-based disc protrusion at L5-S1 which effaces the anterior aspect of the thecal sac and abuts the S1 nerve roots as well as posterior osteophyte/facet joint arthropathy; and (2) "revealed multilevel abnormalities including moderate left neural foraminal narrowing at C5-6 as well as multilevel uncovertebral and facet joint arthropathy." [Doc. 17 at Page ID # 785 (citing Tr. 643, 645)]. Plaintiff also contends these MRI findings support the opinions of Dr. Wilson and Dr. Mehta, which the ALJ discounted.

documented in the record, but responds that the ALJ properly considered Plaintiff's impairments and the effects of her impairments, both severe and non-severe, when making her RFC finding.

Plaintiff bears the burden at step two of proving that she suffers from a severe impairment; in other words, an impairment that significantly limits Plaintiff's ability to perform basic work activities. *See Harley v. Comm'r of Social Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1520(c) (an impairment is considered severe if that impairment "significantly limits your physical or mental ability to do basic work activities."). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," and include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking. 20 C.F.R. § 404.1521(b). A diagnosis alone does not speak to the condition's severity or whether it is disabling. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).

The Sixth Circuit has construed the step two severity determination as a *de minimis* hurdle in the five-step sequential process, as "[t]he goal of the test is to 'screen out totally groundless claims.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). "If [an] individual has at least one severe impairment, the ALJ will then assess how much work the individual can still do." *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (internal citation omitted). As a result, an ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

A claimant's RFC is representative of the most activity that the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). A claimant's RFC is indicative of the type of work that will be prescribed to them by the Social Security because different impairments may create different limitations on a particular claimant's ability to work. Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citation and quotation marks omitted).

The ALJ is not required to discuss every piece of evidence in the record, *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006), but it is well settled that the ALJ must consider *all* of a claimant's medically determinable impairments in the context of that claimant's RFC. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) ("a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both severe and non-severe impairments in the remaining steps") (internal citation omitted); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) ("Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe.") (internal citation omitted); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").

Plaintiff cites to *Reynolds v. Comm'r of Soc. Sec.*, No. 1:12-CV-396, 2014 WL 241527, at *7 (E.D. Tenn. Jan. 22, 2014), where this Court remanded a case because the ALJ's conclusion that a claimant had the severe impairment of "status post traumatic brain injury" did not account for the possible impairment of severe, disabling headaches and the resulting impact on the claimant's ability to work, which rendered court review impossible in that case. Plaintiff argues that, like in *Reynolds*, this case involves additional, distinct, documented impairments that were not properly considered by the ALJ, and that cause additional (but unidentified) limitations that "could impact" Plaintiff's RFC [Doc. 17 at Page ID # 784-85]. Nowhere does Plaintiff explain what these alleged additional limitations are or how they would be inconsistent with the ALJ's determination of her RFC.

Here, at step two, the ALJ noted that Plaintiff had severe impairments of degenerative disc disease, bilateral knee impairments, and depression, which caused significant limitations in Plaintiff's ability to perform basic work activities. The ALJ further noted Plaintiff's pain management records listed fibromyalgia among her diagnosis, which would be expected to contribute to work-related difficulties, although fibromyalgia was not clearly established as meeting the guidelines for diagnosis. The ALJ also noted a tentative diagnosis and some symptoms and signs of psoriatic arthritis that would contribute to Plaintiff's light exertional and postural limitations, but no further work-related limitation. Further, the ALJ addressed that Plaintiff's mild obesity did not impose significant work-related limitations. The ALJ did not specifically mention chronic pain syndrome, lumbar post-laminectomy syndrome, or lumbar radiculopathy, but did extensively discuss Plaintiff's chronic pain, her back and neck problems, and her prior surgery (Tr. 16-23).

Plaintiff asserts that her chronic pain syndrome, lumbar post-laminectomy syndrome, and lumbar radiculopathy are distinct from her degenerative disc disease because an individual with degenerative disc disease does not necessarily suffer from these additional conditions [Doc. 17 at Page ID # 784]. The Commissioner argues that "[w]hile these conditions may not necessarily follow from degenerative disc disease, in this case, the conditions involve symptoms occurring in Plaintiff's back" and "Sixth Circuit law does not require the impairments to be related to find that the ALJ considered all of Plaintiff's impairments." [Doc. 20 at Page ID # 796 (citing *Kirkland*, 528 F. App'x at 427)].

The Court agrees that so long as the ALJ considered all of Plaintiff's impairments, any failure to find Plaintiff's chronic pain syndrome, lumbar post-laminectomy syndrome, and lumbar radiculopathy to be severe impairments at step two would not constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *see also Fisk v. Astrue,* 253 F. App'x. 580, 583 (6th Cir. 2007) ("[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz,* 837 F.2d at 244); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) ("Our review of the ALJ's decision, however, indicates that the ALJ did not fail to combine all of Pasco's impairments. The ALJ specifically noted that the Regulations required him to consider all medically-determinable impairments together if he found any one impairment severe.") (internal citations omitted). As

long as the ALJ considered all of Plaintiff's impairments, it is unnecessary to decide whether the ALJ erred in failing to classify any particular impairments as severe. *See Fisk,* 253 F. App'x. at 584 (quoting *Maziarz,* 937 F.2d at 244).

As expressed in *Reynolds*, the reviewing court must be able to determine whether the ALJ considered all of Plaintiff's medically-determinable impairments together. In this case, the ALJ has made the reviewing court's job more difficult by failing to specifically mention chronic pain syndrome, lumbar post-laminectomy syndrome, and lumbar radiculopathy in her decision. In spite of that difficulty, the Court concludes the ALJ did consider all of the medically determinable impairments together based on her extensive discussion of Plaintiff's chronic pain, back and neck problems, and surgery.

The ALJ specifically states that she carefully considered the entire record and all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the evidence (Tr. 18). The Court has not taken this recitation at face value. Unlike in *Reynolds*, where the reviewing court could not determine if potential limitations from headache were considered in connection with the ALJ's discussion of status post traumatic brain injury, here it appears the ALJ carefully and extensively considered Plaintiff's credible chronic pain and spine-related limitations. While conditions such as lumbar post-laminectomy syndrome and lumbar radiculopathy do not necessarily follow from degenerative disc disease, in this case these conditions involve symptoms occurring in Plaintiff's spine and the ALJ fully addressed Plaintiff's allegations of disabling chronic pain in her spine.

As argued by the Commissioner with specific citation to the record, the ALJ noted that Plaintiff had a lumbar laminectomy or discectomy in 2006 after a work-related injury and returned to work from 2007 through 2012 [Doc. 20 at Page ID # 797 (citing Tr. 19, 321-22, 366,

371)]. The ALJ also noted Plaintiff's testimony that chronic low back pain is her biggest physical problem and that she is treated with pain medication that only "takes the edge off" of her back and knee pain (T. 19). However, the ALJ extensively discussed that Plaintiff received pain management treatment since before November 2011 and that even though she complained of pain at a 6 to 7 on a 10-point scale, her medication regimen stayed basically the same, i.e., oxycodone and fentanyl patch with an occasional nonsteroidal anti-inflammatory, suggesting her "condition was controlled with the medication and required only conservative treatment" as confirmed in various reports, as argued by Defendant [Doc. 20 at Page ID # 797 (citing Tr. 19, 420, 433, 451, 550, 657, 672, 678, 683)]. As also argued by Defendant, other than tenderness and an occasional mildly antalgic gait, Plaintiff's pain management records "do not document neurological or significant functional deficits" [Doc. 20 at Page ID # 797-98 (citing Tr. 19, 407, 410, 415, 420, 423, 425, 428, 430, 433, 443, 448, 451, 546, 549, 553, 555, 557)].

Plaintiff complains that the ALJ failed to acknowledge that she had both mild and more than mild findings on her lumbar and cervical magnetic resonance imaging ("MRI") scans. The parties agree these scans show Plaintiff at the L5-S1 level had "broad-based disc protrusion effacing anterior aspect thecal sac and abutting S1 nerve roots" (Tr. 643). Contrary to Plaintiff's argument, the ALJ did not *ignore* the MRIs as she noted that the MRI studies showed Plaintiff had "*mainly* mild degenerative changes" and "effacement of the thecal sac" at the L4-S1 level (Tr. 20, 643, 645) (emphasis added). Moreover, the ALJ noted Plaintiff's neurological functioning remained intact and no neurosurgical referral was made (Tr. 20, 628-29). Thus, it appears the ALJ was fully aware of and properly considered Plaintiff's MRI scans.

Plaintiff has pointed to no evidence in the record of alleged additional functional limitations related to her chronic pain syndrome, lumbar post-laminectomy syndrome, and

lumbar radiculopathy that the ALJ did not address in considering her pain, back, neck and other impairments specifically mentioned. A diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations. *Lyons v. Astrue*, No. 3:10-CV-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012). "A plaintiff must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination." *Negron v. Comm'r of Soc. Sec.,* No. 3:14-CV-00852, 2017 WL 2546336, at *11 (M.D. Tenn. June 13, 2017) (holding "the regulations do not require that all diagnosed impairments be scrutinized for their severity, much less that any such scrutiny be made explicit in the ALJ's decision. . . . Also, the fact that some of a claimant's diagnosed impairments may have gone unmentioned at the step two severity determination is legally irrelevant.") (internal citations and quotation marks omitted).

In reaching this conclusion, the Court notes that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's subjective complaints are not entirely credible. In determining Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and the extent to which they were supported by the medical evidence in the record. *See* 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). The ALJ found Plaintiff's allegations regarding the

intensity, persistence, and limiting effects of her symptoms were not entirely credible.[4] Plaintiff has not challenged the ALJ's credibility determination. An ALJ's subjective symptom evaluation is "inherently intertwined" with the RFC assessment. *Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at *10 n.7 (E.D. Tenn. May 18, 2016) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")).

The Court concludes that any error at step two was harmless and that remand is inappropriate because it appears the ALJ addressed all of Plaintiff's medically determinable impairments, both severe and non-severe, and resulting limitations when determining her RFC. Accordingly, the ALJ's failure to find that Plaintiff's chronic pain syndrome, lumbar post-laminectomy syndrome, and lumbar radiculopathy were severe, even if wrong, is not reversible error because the ALJ adequately addressed Plaintiff's pain and back issues and limitations and the ALJ's decision is supported by substantial evidence. *See Negron*, 2017 WL 2546336, at *11.

---

[4] The SSA published Social Security Rule "SSR" 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, several months after the ALJ issued her decision. Moreover, SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter. As such, it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, at n.1 (6th Cir. 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, the Court will occasionally refer to the ALJ's analysis using the same term.

### C. Medical Opinion Evidence

In considering a claim for disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c)(2).[5] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion of the treating source is not given controlling weight, then the ALJ must consider certain factors to determine what weight is appropriate, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing § 404.1527(c)(2)). The ALJ is not required to explain how she considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's medical opinion."). "[A] properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians[, but] the regulations do not allow the application of greater scrutiny to a treating-source opinion as a

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. For all claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

means to justify giving such an opinion little weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013) (citing SSR No. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (holding an ALJ may give substantial weight to the opinions of state agency medical consultants when the opinions are supported by the record as a whole). Notably, the ALJ need not give reasons for discounting non-treating source opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions.") (internal citations omitted).

Plaintiff argues the ALJ did not correctly apply the treating source rule because the ALJ declined to give controlling or substantial weight to Plaintiff's treating physician, Hemal V. Mehta, M.D., a pain management doctor with Pain MD Pain & Wellness Clinics who completed a medical source statement that equates to a less-than-sedentary RFC for Plaintiff [Doc. 17 at Page ID # 780-83]. Dr. Mehta treated Plaintiff since 2014, and the Commissioner does not dispute that he qualifies as a treating physician.

The ALJ assigned "little weight" to Dr. Mehta's opinion (Tr. 21). Plaintiff argues the ALJ did so for the singular reason that she concluded Dr. Mehta's opinion was based solely on Plaintiff's subjective reports. Plaintiff argues that Dr. Mehta never stated that he based his opinion only on her subjective complaints; so this explanation by the ALJ falls short of providing "good reasons" for failing to give Dr. Mehta's opinion controlling or substantial weight. Plaintiff also argues that Dr. Mehta's treatment records are consistent with, and provide support for, his opinion and that the ALJ failed to weigh his opinion using the required regulatory factors.

Plaintiff also disputes the weight given the opinion of consulting examiner Woodrow Wilson, M.D., who opined that Plaintiff could sit two to four hours in an eight-hour day; stand and walk probably less than two hours each; and occasionally lift 10 to 15 pounds (Tr. 535). The ALJ also assigned "little weight" to this opinion, and she concluded it also was based on Plaintiff's subjective reports (Tr. 21). As Dr. Wilson also never stated that he based his opinion only on Plaintiff's subjective complaints, Plaintiff contends the ALJ's erred in giving Dr. Wilson's opinion little weight.

Specifically addressing Plaintiff's pain management treatment, the ALJ found:

> In terms of the claimant's alleged musculoskeletal and pain complaints, the evidence of record establishes she was treated for an on-the-job back injury in 2006, and underwent diskectomy. The claimant also underwent right knee surgery in 2006 to remove a loose object and correct a patellofemoral tracking disorder. She returned to work and earned substantial earnings 2007 through 2012 in an office setting, in which she was up and down all day, standing, walking, and sitting.

> The claimant has received pain management treatment since before November 2011 for her complaints of chronic, persistent pain. She consistently rates her pain between six and seven on a scale to ten throughout the period in question, and her medication regimen has changed very little (oxycodone and fentanyl patch and occasionally a nonsteroidal anti-inflammatory). Hemal Mehta, M.D., took over the claimant's pain management around December 2014.

> Pain management records do not document neurological or significant functional deficits in 2013 or 2014, only occasional mildly antalgic gait. Woodrow Wilson, M.D., performed a consultative examination of the claimant in June 2013. The claimant had good range of spinal motion, negative straight leg raising, and normal neurological functioning. She had a very slight limp, full range of motion of the knees, and no apparent joint effusion. The claimant had alleged a diagnosis of fibromyalgia in the past, but Dr. Wilson observed no obvious trigger points. He opined she was capable of a range of light to sedentary work activity, which appears to rely heavily on the claimant's subjective report of pain.

> The claimant continued to receive pain management with little change in signs or symptoms in 2014 and 2015, now with occasional positive straight leg raising. The claimant began primary care treatment with Kathy Highland, APN, in October 2014, and her neurological examination was normal.

(Tr. 19) (citations to administrative record omitted). Directly addressing the opinion evidence at issue, the ALJ stated,

> I give some weight to the treating specialist George Lien, M.D., who assessed a capacity for a reduced range of medium work activity in July 2006, after her back surgery. No other treating source offered an opinion regarding the nature and limiting effects of the claimant's impairments, until pain management provider Dr. Mehta completed a medical source statement in October 2015. I give little weight to Dr. Mehta's opinion and that of consultative examiner Dr. Wilson, because both sources appear to base their assessments on the claimant's subjective report, which I find only partially credible for the reasons set forth above. I give great weight to the opinions of reviewing medical consultants for the State agency, because the evidence of record continues to show no significant change in the claimant's impairments or greater functional limitations.

(Tr. 21) (citations to administrative record omitted).

The Court is not convinced by Plaintiff's argument that the above sentence about reliance on Plaintiff's subjective report by Dr. Wilson and Dr. Mehta indicates that such reliance is the *sole* reason their opinions were discounted. A fair reading of the entire decision demonstrates the ALJ also discussed that Dr. Mehta's opinion was not supported by, and was inconsistent with, other evidence of record, including the findings of Dr. Lien, another treating physician, as well as Plaintiff's generally normal findings on examination. The ALJ discussed evidence that did not support Dr. Mehta's and Dr. Wilson's opinions, including Dr. Lien's findings of ability to perform a reduced range of medium work, other state agency medical consultant opinions, and generally normal findings on Plaintiff's examinations (Tr. 19, 21, 69-72, 100-02, 291, 295-96). Moreover, "reasoning that a medical opinion relied too heavily on the claimant's subjective

complaints [is] adequate to support an ALJ's decision to give little weight to the opinion." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (internal citation omitted).

The ALJ also found Plaintiff "not entirely credible," only "partially credible," and not "sufficiently credible that her pain is severe enough to prevent all work activity" (Tr. 19, 20, 21). The ALJ properly discussed among other things, Plaintiff's subjective symptoms, activities of daily living, treatment, and why she did not find Plaintiff's allegations entirely consistent with the evidence or entirely credible[6] (Tr. 16-21). For instance, the ALJ noted Plaintiff took care of an ill grandmother in 2015, drove regularly without problems, and received little treatment other than pain management during the period at issue, and the ALJ found such evidence inconsistent with Plaintiff's allegations of debilitating limitations. *See Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 425-26 (6th Cir. 2014) (finding the opinion of a treating source may be discounted "where that opinion was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings."); *see also Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account [the claimant's] daily activities, which included caring for two school-aged children and performing household chores.").

The ALJ need only include limitations in her RFC finding that are supported by the record and need not base her finding on any one physician's opinion, as argued by the Commissioner. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an

_____

[6] As previously noted, Plaintiff has not challenged this finding.

individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."). Although the RFC determination is not completely consistent with Dr. Mehta's and Dr. Wilson's opinions about Plaintiff's limitations, the ALJ's RFC determination is supported by substantial evidence, and it is the function of the ALJ to resolve the conflicts between the medical opinions and other evidence in the record. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [the claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."). Substantial evidence exists supporting the ALJ's evaluation of Dr. Mehta's and Dr. Wilson's opinions, requiring the Court to affirm the Commissioner's decision.

While cases help to "identify which reasons will later be found to be sufficiently good reasons on appellate review[,] . . . the lines of demarcation are not clear, and in the vast majority of cases, a position defending a final administrative decision despite its imperfections will be justified." *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 728 (6th Cir. 2014) (internal quotation marks omitted). Despite the decision's imperfections in this case, the Court finds the ALJ properly considered the evidence as a whole to make her RFC finding. The ALJ's summary of the evidence and explanation of her decision allows this Court to conduct a meaningful review of the record and the reasons for the ALJ's decision. As the ALJ properly considered and gave good reasons as required for discounting Dr. Mehta's opinion (and also properly considered Dr. Wilson's opinion) in making his RFC determination, the ALJ did not err in determining that Plaintiff was not disabled.

**V.      CONCLUSION**

For the foregoing reasons,

1)  Plaintiff's motion for judgment on the administrative record [Doc. 14] is

    **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 19] is **GRANTED**;

    and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.


SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE